**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JOHNNY RODRIGUEZ,**
    **Plaintiff,**

v.                                    No: 5:06cv100/SPM/MD

**MICHAEL J. ASTRUE[1]
Acting Commissioner of Social Security,**
    **Defendant.**

_____

**ORDER and
REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Rodriguez' application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] On February 12, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he will be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

## PROCEDURAL HISTORY

In December 1999 plaintiff was involved in a motor vehicle accident in which he suffered severe injuries to his left leg and ankle. He applied for both disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI). On February 28, 2003 an Administrative Law Judge (ALJ) made a fully favorable ruling, finding plaintiff disabled and entitled to both DIB and SSI (tr. 40-43). However, it was subsequently determined that the motor vehicle accident resulted in plaintiff being charged with DUI with great bodily harm, which is a felony in Florida. Fla. Stat. § 316.193(3)(c)2. Plaintiff was convicted of the offense on July 12, 2001 (tr. 91-92). On November 3, 2003 the Appeals Council remanded the case for further consideration, because, as all parties agree, in determining disability under a DIB claim, the Commissioner cannot consider any physical or mental impairment, or the aggravation of an existing impairment, which occurs in the commission of a felony, and for which the applicant is convicted (tr. 30-31); 20 C.F.R. § 404.1506.[2] On remand, the ALJ was directed to determine whether the plaintiff was disabled after disregarding all impairments or aggravations of impairments that arose during the commission of a felony.

A hearing was held on September 20, 2005 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on January 20, 2006 (tr. 15-24) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

---

[2] There is no comparable statute or regulation for SSI, and plaintiff's SSI payments continue.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff met the insured for benefits requirements through September 30, 2003; that plaintiff had borderline intellectual functioning that was severe, but that he did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No, 4 on and prior to September 30, 2003; that plaintiff's allegations were not credible because the limitations he identified were caused while he was committing felony DUI; that plaintiff had the residual functional capacity to perform work at any exertional capacity; that plaintiff was able to perform his past relevant work; and that he was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## DISCUSSION

The plaintiff argues that the ALJ erred in rejecting the results of a consultative psychological examination, and in failing to find that plaintiff was presumptively disabled under listing 12.05, and that he was disabled from his onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

There is no dispute that plaintiff suffered very severe injuries in the December 1999 motor vehicle accident, and that those injuries are disabling.  This appeal does not deal with those injuries.  Rather, plaintiff contends that his pre-existing mental impairments render him disabled.  Consequently, the lengthy medical record in this appeal is substantially irrelevant.  The only truly relevant documentation deals with (1) plaintiff's past work history and (2) the consultative psychological examination.

Plaintiff's work history is not totally clear.  However, the record shows that he was born in May, 1968 (tr. 533) and lived as a youth in Delaware.  He finished high school but did not graduate (tr. 534).  Beginning in 1988, at age 20, he worked as a stocker in a local grocery store (tr. 536-537).  He moved to Florida in 1995, and worked from 1996 until July 1998 as a plumber's helper, as a floor waxer and as a stocker at Publix Supermarket (tr. 224, 225).  In 1998 he started vocational training with the hope of getting his GED and becoming an electrician, but his teacher did not think he was ready to take the GED examination, and he was later involved in the motor vehicle accident, so he was unable to finish his training (tr. 535-536).

The consultative psychological examination took place on July 15, 2002, when plaintiff was examined by Robin E. O'Hearn, Ph.D.  Dr. O'Heran noted that plaintiff's primary complaint was chronic pain and limited mobility following a motor vehicle

accident in December 1999; that his speech was slow in pace, very soft and not disordered; that he was not working and watched TV; that he had little social contact but had generally good relationships with others; that he could complete such tasks as making and keeping appointments, taking medications and doing routine chores in a timely and appropriate manner; that his thought process was concrete but coherent and goal directed; that his thought content was appropriate to conversation; that he had no perceptual abnormalities; that his mood was moderately depressed, quiet and polite; that his affect was stable and blunted; that he attended well to questions and task instructions and stayed on task well; that he had chronic depression since the accident; that his sustainability was very poor due to pain; that he could follow simple instructions; that his pace was somewhat slow; that his attention and concentration were adequate, but he became fatigued after 45 minutes; that his ability to withstand workday stress and adapting to change was poor to fair, "based solely on cognitive and emotional status;" that he was "quite limited intellectually and is experiencing significant depression secondary to his pain condition." (Tr. 353-354). On a standard IQ test plaintiff scored 66 in verbal, 72 in performance and 65 in full scale which put him in the mild mental retardation category (tr. 354). Dr. O'Hearn's diagnosis was major depressive disorder, moderate and mild mental retardation (tr. 355).

    1.    <u>Dr. O'Hearn's opinion.</u>

Although plaintiff presents two grounds for reversal, they overlap considerably because they are both centered around plaintiff's mental retardation. Plaintiff first says that the ALJ rejected Dr. O'Hearn's findings and substituted his own opinion for that of the expert. Unfortunately, plaintiff is less than clear in describing just what part of Dr. O'Hearn's opinion the ALJ rejected. Dr. O'Hearn diagnosed major depression and gave plaintiff IQ scores in the 60 to 70 range, which is nowhere disputed. Plaintiff's claim seems to focus on Dr. O'Hearn's findings that plaintiff has (1) low IQ scores, (2) poor ability to maintain social

functioning because he had no real social or recreational activity, (3) only "somewhat slow" ability to maintain attention, concentration and pace, and (4) poor to fair ability to withstand workday stress (doc. 14, p. 10).  But Dr. O'Hearn specifically did not make any findings consistent with a presumptive listing (discussed below), and limited his diagnosis to depression (secondary to physical condition) and mild mental retardation.  Moreover, he noted that plaintiff could complete tasks and make and keep appointments, take medications and do routine chores in a timely and appropriate manner; that his thought process was concrete but coherent and goal directed; that his thought content was appropriate to conversation; that he had no perceptual abnormalities; that his mood was moderately depressed, quiet and polite; that his affect was stable and blunted; and that he attended well to questions and task instructions and stayed on task well.

Plaintiff also contends that Dr. O'Hearn's consultative report was the only evidence in the record concerning plaintiff's mental capacity, and that the non-examining consultant, Dr. Tay, affirmed Dr. O'Hearn's diagnosis.  That is only partially correct.  First, as will be discussed in more detail below, plaintiff's work history was "evidence" concerning any mental restrictions on plaintiff's ability to work.  Second, Dr. Tay found that plaintiff's mental limitations were "moderate" in only two categories (the ability to understand and carry out detailed instructions), and not limited in all others (tr. 370).  As the discussion in plaintiff's second ground, below, shows, that is not sufficient.

It is certainly true that an ALJ cannot substitute his own opinion for that of an expert.  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (11th Cir. 1981).  The weight given to such a physician's opinion depends on the extent to which it is consistent with the other evidence as to the severity and duration of a claimant's alleged impairments.  *Id.*, n. 5 (citing 20 C.F.R. § 404.1526).  "An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own

uninformed medical evaluations for those of claimant's treating physicians. . . ." *Marbury v. Sullivan*, 957 F.3d 837 (11th Cir. 1992) (concurring opinion). However, that is not what happened here. Regardless of what Dr. O'Hearn believed concerning plaintiff's mental abilities, the plaintiff has worked for much of his adult life, and the evidence shows unequivocally that the reason he can no longer work derives solely from his physical injuries.

Moreover, "the ALJ [is] not required to find that [plaintiff] was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986); *see also Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) (citing cases). In *Popp*, the court affirmed the denial of disability benefits for a person who had a verbal IQ score of 79, a performance IQ score of 69 and full scale IQ of 73. The person had an associates degree, had worked, was able to drive, and appeared to be fully functioning in society. This case is also very similar to *Clark v. Apfel*, 141 F.3d 1253 (8th Cir. 1998) in which the plaintiff had a verbal IQ of 70, a performance IQ of 66 and a full scale IQ of 67. Even in that case, the court affirmed denial of benefits notwithstanding two scores below 70. The stated reasons were that plaintiff achieved those test scores at a one-time examination by a non-treating psychologist. No other physician had ever found the plaintiff retarded or suspected as much. Plaintiff was literate and had worked in the private sector and there was no evidence that his daily activities or social functioning were restricted. Most of those factors are present here. Plaintiff in this case testified that he read the newspaper but that there were certain words he could not pronounce, and sometimes did not understand (tr. 542). He was in special education in high school, but he worked for much of his adult life in spite of the fact that he was "slow."

Finally, the ALJ did not reject the plaintiff's IQ scores. He acknowledged the IQ scores, but held that the noted deficits in plaintiff's mental functioning combined

with his IQ scores did not rise to a diagnosis by Dr. O'Hearn that plaintiff was mentally restricted to the extent that he was disabled. There was substantial record evidence to support this determination, and the plaintiff is not entitled to reversal on this ground.

2.   <u>Listing 12.05.</u>

Plaintiff's second ground for reversal is that he met the requirements of listing 12.05C and/or 12.05D. This contention overlaps with plaintiff's first ground. The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental conditions that are presumptively disabling. If a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The Commissioner's listing at 12.05C and D provides as follows:

> 12.05   *Mental Retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>      The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restrictions of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each for an extended duration.

The ALJ held that plaintiff's borderline intellectual functioning and mental condition did not meet the requirements of either § 12.05C or D (tr. 19).  The ALJ reasoned that § 12.05C was not met because that listing requires *both* the requisite IQ score (which is not disputed) which manifested itself before age 22, *and* a physical or other mental impairment imposing an additional and significant work-related limitation or function.  The ALJ found that the evidence did not establish that deficits in adaptive behavior manifested before age 22, noting that even though plaintiff attended special education classes, his work history included semiskilled employment (tr. 19).  The ALJ further found that before the motor vehicle accident, plaintiff did not have any additional physical or mental impairment sufficient to meet the listing.  The ALJ's reasoning is supported by substantial record evidence.  While special education in secondary school may indicate a low IQ, it does not necessarily.  Moreover, even if the condition did manifest itself before age 22, plaintiff still did not prove a "physical or other mental impairment imposing an additional and significant work-related limitation of function" prior to the motor vehicle accident.  Thus, the ALJ did not err in finding that plaintiff did not meet listing § 12.05C.

The ALJ also found that plaintiff did not meet listing 12.05D.  First, the manifestation before age 22 is required for § 12.05D also.  The evidence of plaintiff's work history supports the ALJ's finding that the early manifestation requirement was not met.  And even if it were met, plaintiff would still have to prove at least two of the four restrictions in the listing.  The ALJ specifically discounted all opinions that plaintiff's depression contributed to adaptive behavior problems, because the record clearly showed that plaintiff's depression was secondary to his physical injuries, and thus could not be considered.  For example, Dr. O'Hearn noted that the recent motor vehicle accident had "given rise to chronic pain and depression," that plaintiff's sustainability was "very poor *due to pain*," and that withstanding workday stress was poor to fair due to cognitive limitations and "significant depression *secondary to his pain condition.*"  (Tr. 355) (emphasis added).  Plaintiff testified that

his depression affected his life, that he wanted to be alone, and that he didn't do anything (tr. 544), but there is no evidence in the record that plaintiff suffered from depression prior to the motor vehicle accident.  Dr. O'Hearn specifically tied the depression to plaintiff's pain, so there is no doubt that any loss of functioning caused by depression is related to plaintiff's felony DUI, and therefore cannot be considered.  Moreover, plaintiff told Dr. O'Hearn that he had "generally good relationships with others."  Thus, the ALJ's determination that plaintiff had (1) no restrictions in activities of daily living (2) no difficulties in maintaining social functioning, (3) mild difficulties in concentration, persistence or pace, and (4) no episodes of decompensation for extended periods prior to the motor vehicle accident (tr. 20) was well supported by the record.  Since the plaintiff must prove "marked" restrictions in at least two of these factors in order to meet the requirements of § 12.05D, the ALJ did not err, and plaintiff is not entitled to reversal.

Accordingly, it is ORDERED that the clerk shall change the docket to reflect that Michael J. Astrue is the defendant in this case, and it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 20th day of February, 2007.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

Case No: 5:06cv100/SPM/MD